UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X
                        :

DOWN TO EARTH ORGANICS, LLC,          :
                        :

          Plaintiff,             :

          -v-               :          24 Civ. 6615 (JPC)

TRAVIS SCOTT a/k/a JACQUES BERMAN    :        OPINION AND ORDER
WEBSTER II, *et al.*,              :

          Defendants.       :

-------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

      Plaintiff Down to Earth Organics, LLC ("DTE") initiated this case by filing a Complaint against Defendants Travis Scott a/k/a Jacques Berman Webster II, Cactus Jack Publishing, LLC, LaFlame Enterprises, Inc., and John Does 1-10 (collectively "Defendants").  But after Defendants filed an Answer and moved for summary judgment, DTE, with leave of Court, voluntarily dismissed the case with prejudice.  Defendants now seek to recover their attorneys' fees expended during the pendency of this action.  For the reasons explained below, the Court denies Defendants' motion.

## I. Background

On September 2, 2024, DTE filed a Complaint against Defendants for trademark infringement under the Lanham Act, *see* 15 U.S.C. § 1114(1) (protecting registered trademarks); *id.* § 1125(a)(1)(A) (protecting unregistered trademarks), and unfair competition, deceptive and unfair trade practices, and unjust enrichment under New York State law.  Dkt. 1 ("Complaint") ¶¶ 39-68.  The gravamen of DTE's claims was that it owned the trademark rights to use the phrase "Down to Earth" across multiple media, *see id.* ¶¶ 15 (clothing), 16 (snack bars), 17 (podcasts), and that Defendants infringed on those rights by selling clothing with the "Down to Earth" mark, *id.* ¶¶ 28-38.

Defendants filed an Answer on December 3, 2024, Dkt. 13, and on January 15, 2025, the Court entered a Case Management Plan wherein all discovery was to be completed by June 30, 2025, Dkt. 21.  Then, on June 6, 2025, DTE sought leave to move to amend its Complaint to add a new defendant.  Dkt. 30.  The Court granted leave to file such a motion on June 10, 2025, Dkt. 32, but on June 24, 2025, before DTE moved to amend, the Court also granted Defendants leave to move for summary judgment, Dkt. 37.

DTE moved to amend its Complaint on June 30, 2025, Dkt. 38, Defendants opposed DTE's motion on July 9, 2025, Dkt. 44, and DTE submitted a reply in support of its motion on July 15, 2025, Dkt. 49.  Meanwhile, Defendants moved for summary judgment on July 9, 2025.  Dkt. 46. Then, on July 14, 2025, DTE requested an extension to file an opposition to Defendants' motion. Dkt. 48.  The Court scheduled a conference for July 17, 2025 to discuss DTE's extension request, Dkt. 51, but DTE neglected to attend that conference, so the Court rescheduled the conference for July 21, 2025, *see* July 17, 2025 Docket Entry.  At the conference on July 21, 2025, the Court granted DTE's request for an extension, allowing it to submit an opposition to Defendants' motion

for summary judgment by August 13, 2025. *See* July 21, 2025 Docket Entry. On August 13, 2025, the Court granted DTE a further extension, allowing it to oppose Defendants' motion for summary judgment by August 18, 2025, but warned DTE that "[n]o further extensions of the briefing schedule will be granted." Dkt. 53. On August 19, 2025, after that extended deadline passed, DTE made yet another extension request, Dkt. 54, which the Court denied later the same day, Dkt. 55.

After missing its deadline to oppose Defendants' motion for summary judgment, DTE filed a motion to voluntarily dismiss its claims with prejudice on August 27, 2025. Dkt. 57. Defendants opposed dismissal with prejudice on September 4, 2025, Dkt. 59, and DTE submitted a reply in further support of voluntary dismissal with prejudice on September 10, 2025, Dkt. 60. On November 6, 2025, the Court granted DTE's motion and dismissed this case with prejudice. *Down to Earth Organics, LLC v. Scott*, No. 24 Civ. 6615 (JPC), 2025 WL 3101243, at *2 (S.D.N.Y. Nov. 6, 2025).

On November 25, 2025, Defendants filed the instant motion for attorneys' fees pursuant to 15 U.S.C. § 1117(a). Dkt. 66. DTE opposed Defendants' motion on December 16, 2025, Dkt. 67, and Defendants submitted a reply in support of their motion on December 22, 2025, Dkt. 68.

## II.  Legal Standard

A court's "basic point of reference when considering the award of attorney's fees is the bedrock principle known as the American Rule: Each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." *Peter v. Nantkwest, Inc.*, 589 U.S. 23, 28 (2019) (internal quotation marks omitted). Thus, aside from the roughly "150 existing federal fee-shifting provisions," *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 684 (1983), "the general rule [is] that . . . litigants pay their own attorneys' fees," *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 257 (1975).

3

One statutory exception to the American Rule is 15 U.S.C. § 1117(a), which provides that in a suit for infringement of a registered or unregistered trademark in violation of the Lanham Act, a "court in exceptional cases may award reasonable attorney fees to the prevailing party." *But see Gracie v. Gracie*, 217 F.3d 1060, 1069 (9th Cir. 2000) (describing the general rule that "[i]n an award of reasonable attorney fees pursuant to the Lanham Act, a party cannot recover legal fees incurred in litigating non-Lanham Act claims" (citation modified)).[1]

For a case to count as "exceptional" in the context of Section 1117(a), it must "stand[] out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014) (interpreting "exceptional cases" in the context of 35 U.S.C. § 285); *see also Sleepy's LLC v. Select Comfort Wholesale Corp.*, 909 F.3d 519, 522 (2d Cir. 2018) (clarifying that *Octane Fitness*'s interpretation of "exceptional cases" in the context of 35 U.S.C. § 285 applies equally to 15 U.S.C. § 1117(a)).  District courts "determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances" and looking to "factors[] including frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Octane Fitness*, 572 U.S. at 554, n.6 (internal quotation marks omitted).

---

[1] The Court herein concludes that this is not an "exceptional case" meriting an award of attorneys' fees, so the Court need not decide whether a defendant is a "prevailing party" when a plaintiff voluntarily dismisses all of his claims prior to a judgment on the merits. *Cf. Carter v. Inc. Vill. of Ocean Beach*, 759 F.3d 159, 166 (2d Cir. 2014) ("[T]he voluntary dismissal of some claims, coupled with the grant of summary judgment dismissing the claims that remain, makes [a defendant a] prevailing part[y].").

It is sometimes said that "the primary purpose of the 'exceptional cases' criterion was to authorize the award of attorney's fees to plaintiffs, in cases in which the infringement was malicious, fraudulent, willful, or deliberate," *Bittner v. Sadoff & Rudoy Indus.*, 728 F.2d 820, 828 (7th Cir. 1984) (internal quotation marks omitted), but "Congress' passage of the act was not intended to protect and serve *only* plaintiffs," *IMAF, S.p.A. v. J.C. Penney Co.*, 810 F. Supp. 96, 98 (S.D.N.Y. 1992) (emphasis added). Section 1117(a)'s attorneys' fees provision also "endeavors to afford protection to defendants against unfounded suits brought by trademark owners for harassment and the like." *Id.* (citation modified).

### III. Discussion

Defendants argue that they should be awarded their attorneys' fees because the frivolousness of DTE's case and the manner in which it was litigated make this an "exceptional case[]" within the meaning of Section 1117(a). The Court disagrees and declines to award attorneys' fees.

First, Defendants argue that DTE's claims were factually and legally baseless. Dkt. 66-1 ("Motion") at 23-24; *cf. Octane Fitness*, 572 U.S. at 555 ("A case presenting . . . exceptionally meritless claims may sufficiently set itself apart from mine-run cases."). "The Second Circuit . . . has defined 'objective unreasonableness' for legal theories as 'whether the argument is frivolous, i.e. the legal position has no chance of success, and there is no reasonable argument to extend, modify, or reverse the law as it stands.'" *PaySys Int'l, Inc. v. Atos Se*, No. 14 Civ. 10105 (DLC), 2019 WL 2051812, at *9 (S.D.N.Y. May 9, 2019) (quoting *Star Market Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 177 (2d Cir. 2012)). "An action is 'frivolous' when either: (1) the factual contentions are clearly baseless, such as when allegations are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal

theory." *Universal Church, Inc. v. Universal Life Church/ULC Monastery*, No. 14 Civ. 5213 (NRB), 2019 WL 4601741, at *3 (S.D.N.Y. Sept. 19, 2019) (quoting *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998)).

DTE's claims against Defendants were not so plainly meritless as to warrant a fee award. From a factual perspective, Defendants argue that DTE's claims were baseless because the website through which DTE marketed "Down to Earth" products "was offline and inactive within months after the initiation of this lawsuit," Motion at 22, and because none of the Defendants "developed, manufactured, marketed, and distributed the merchandise at issue," *id.* at 25. From a legal perspective, Defendants also contend that "the phrase ['Down to Earth' is] a common idiom, used [on the products at issue] in a non-trademark, informational sense, . . . and constitutionally protected as expressive fair use." *Id.* at 23. But although it does seem unlikely that DTE's claims would have succeeded, none of these factors show that DTE's claims were "the product of *delusion or fantasy*" or otherwise "*indisputably* meritless." *Universal Church*, 2019 WL 4601741, at *3 (emphases added) (quoting *Livingston*, 141 F.3d at 437); *see also Jackpocket, Inc. v. Lottomatrix NY LLC*, No. 22 Civ. 5772 (LJL), 2023 WL 4145515, at *4 (S.D.N.Y. June 23, 2023) ("The fact that Plaintiff lost its lawsuit does not mean that it was unreasonable for Plaintiff to bring the lawsuit in the first place."). Indeed, Defendants do not dispute DTE's contention that, on May 14, 2019, the U.S. Patent and Trademark Office granted its application to register as a trademark the "Down to Earth" phrase for use on apparel. *See* Complaint ¶¶ 7, 15, Exh. 1; Dkt. 46-2 ¶¶ 6-7 (Defendants' statement pursuant to Local Civil Rule 56.1 in support of its summary judgment motion).

Second, and relatedly, Defendants argue that DTE initiated this suit "not to vindicate rights, but to extract a settlement for reasons unrelated to the merits." Motion at 21; *see id.* at 21-23, 27; *see also id.* at 16-17 (comparing DTE's conduct in this litigation to its conduct in a prior case it

6

brought against Netflix).  A court may conclude that "[a]n action is brought in bad faith when, for example, it is clear that a plaintiff has no intention of testing the merits of its claims, but wants to extort a nuisance value settlement from a [d]efendant who otherwise would have to spend tens or hundreds of thousands of dollars in discovery." *JC Hosp. v. Hochberg*, 703 F. Supp. 3d 448, 467 (S.D.N.Y. 2023) (internal quotation marks omitted); *see also Universal Church*, 2019 WL 4601741, at *4 ("The paradigmatic case of improper motive justifying an exceptional case finding is where a plaintiff with no intention of testing the substance of its theories brings meritless claims to extract a nuisance value settlement based on the fact that defendants will be required to expend tens or hundreds of thousands of dollars in discovery." (internal quotation marks omitted)).

DTE's conduct does not evince a desire to extract a nuisance value settlement.  Defendants argue that "entire swaths of [DTE's] Complaint . . . seem to be a direct copy-and-paste from [its] complaint [in a separate action] against Netflix" that settled soon after it was filed.  Motion at 16. Defendants further contend that DTE's failure to take more than a single deposition, conduct consumer surveys to determine whether the phrase "Down to Earth" had acquired secondary meaning, or marshal any evidence of actual consumer confusion demonstrate that DTE intended to settle this action in a manner similar to the Netflix suit.  *Id.* at 25-26.  Although the Court is somewhat concerned by the similarities of DTE's Complaint in this action to the complaint in its prior lawsuit against Netflix and other defendants, *see Down to Earth Organics, LLC v. Efron*, No. 22 Civ. 6218 (NSR) (S.D.N.Y.), Dkt. 13, and agrees that DTE could have done more to marshal evidence during discovery, DTE's counsel's lack of diligence in seeking to develop proof to support the claims in this case is unfortunately far from aberrant.  Additionally, the fact that DTE litigated this case for over a year, conducting at least some amount of discovery and even filing a motion to amend the Complaint, cuts against inferring a bad-faith motive.  *See Universal Church*,

2019 WL 4601741, at *4 (considering the fact that a plaintiff incurred litigation costs as indicating a lack of bad faith); *Joao Control & Monitoring Sys., LLC v. Dig. Playground, Inc.*, No. 12 Civ. 6781 (RJS), 2018 WL 1596068, at *6 (S.D.N.Y. Mar. 28, 2018) (not finding bad faith when a plaintiff litigated a case "over a period of years, presumably at substantial expense to itself (or to its counsel)").

Finally, Defendants argue that DTE conducted this litigation in a manner that caused unnecessary delay and created unnecessary expense. Motion at 23-26; *cf. Octane Fitness*, 572 U.S. at 555 ("[A] district court may award fees in the rare case in which a party's unreasonable conduct—while not necessarily independently sanctionable—is nonetheless so 'exceptional' as to justify an award of fees."). In particular, Defendants contend that DTE disregarded pre-suit correspondence from their counsel which outlined the problems with DTE's legal theories, and note that DTE delayed the resolution of this case by requesting multiple briefing extensions and failing to attend a conference on June 17, 2025. *See* Motion at 22-24. "Most cases awarding fees," however, "involve *substantial* litigation misconduct." *Louis Vuitton Malletier, S.A. v. My Other Bag, Inc.*, No. 14 Civ. 3419 (JMF), 2018 WL 317850, at *3 (S.D.N.Y. Jan. 8, 2018) (citation modified). Here, DTE's repeated failure to comply with deadlines or to litigate efficiently, however unfortunate, is far afield from those cases where courts have awarded fees due to "bad faith litigation tactics" that necessitated "burdensome and time-consuming" responses. *Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC*, No. 08 Civ. 442 (DLC), 2016 WL 1328936, at *3 (S.D.N.Y. Apr. 5, 2016).

In short, DTE's handling of this case was far from exemplary, but it was not so unreasonable as to be "exceptional" within the meaning of Section 1117(a).

### **IV. Conclusion**

For the foregoing reasons, the Court denies Defendants' motion for attorneys' fees. This decision is without prejudice to Defendants filing any motion for costs pursuant to 28 U.S.C. § 1920, Federal Rule of Civil Procedure 54, or Local Rule 54.1. *Cf.* 10 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2666 (4th ed. 2025) (distinguishing costs, fees, and expenses). The Clerk of Court is respectfully directed to close the motion at Docket Number 66.

SO ORDERED.

Dated: April 30, 2026
New York, New York

JOHN P. CRONAN
United States District Judge